# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAMILLE PANIA and RASHIYA ALNURRIDIN, *individually and on behalf of all others similarly situated*,<br><br>     Plaintiffs,<br><br>        v.<br><br>CRUNCH HOLDINGS, LLC; CRUNCH FRANCHISING, LLC; CRUNCH, LLC<br><br>     Defendants. | Case No. 1:24-cv-7127-MVK |

## MEMORANDUM OF LAW IN SUPPORT OF CRUNCH HOLDINGS, LLC, CRUNCH FRANCHISING, LLC, AND CRUNCH, LLC'S MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY PROCEEDINGS

By: */s/ Elana H. Somers*
Elana H. Somers
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
Email: elana.somers@sidley.com

Ian M. Ross (*pro hac vice*)
SIDLEY AUSTIN LLP
1001 Brickell Bay Drive
Miami, FL 33131
Telephone: (305) 391-5100
Facsimile: (305) 391-5101
Email: iross@sidley.com

*Counsel for Defendant Crunch Holdings, LLC, Crunch Franchising, LLC, and Crunch LLC*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................................................1

BACKGROUND .............................................................................................................................2

    A.    Plaintiff Pania...........................................................................................................3

    B.    Plaintiff Al-Nurridin .................................................................................................4

    C.    Plaintiffs' Agreements .............................................................................................4

DISCUSSION ..................................................................................................................................6

I.      LEGAL STANDARD..........................................................................................................6

II.     PLAINTIFFS SHOULD BE COMPELLED TO ARBITRATE THEIR CLAIMS ON AN INDIVIDUAL BASIS....................................................................................................7

    A.    Plaintiffs Agreed to Arbitrate Their Claims on an Individual Basis by Assenting to the Terms and Conditions of Their Membership................................7

    B.    Plaintiff Agreed to Delegate Any Questions of Arbitrability to the Arbitrator .....10

          1.    Plaintiffs cannot avoid their agreement to delegate issues of arbitrability by challenging the Arbitration Agreement............................11

          2.    Plaintiffs should not be permitted to avoid their agreement to delegate issues of arbitrability to the arbitrator by arguing that those issues are formation issues. ......................................................................13

III.    THIS ACTION SHOULD BE STAYED PENDING ARBITRATION...........................21

CONCLUSION...............................................................................................................................21

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AF Trucking Inc. v. Bus. Fin. Servs., Inc.*,
No. 19-CV-8149 (CS), 2020 WL 2765678 (S.D.N.Y. May 28, 2020) .................................13

*Alvarez v. Experian Info. Solutions, Inc.*,
661 F. Supp. 3d 18 (E.D.N.Y. 2023) ...............................................................................16, 18

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ...........................................................................................................6

*Bakon v. Rushmore Serv. Ctr., LLC*,
No. 16-CV-6137, 2017 WL 2414639 (E.D.N.Y. June 2, 2017) ..............................................17

*Barton v. Zhang*,
No. 23-cv-08536 (LJL), 2024 WL 3228445 (S.D.N.Y. June 27, 2024) .................................19

*Berkson v. Gogo LLC*,
97 F. Supp. 3d 359 (E.D.N.Y. 2015) ...................................................................................8

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006) ...........................................................................................................13

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2003) .............................................................................................................6

*Coe v. Coca-Cola Company*,
702 F. Supp. 3d 140 (W.D.N.Y. 2023) ............................................................................9, 10

*Collins & Aikman Prods. Co. v. Building Sys.*,
58 F.3d 16 (2d Cir. 1995) ....................................................................................................19

*ConocoPhillips Co. v. Graham*,
No. 01-11-00503-CV, 2012 WL 1059084 (Tex. App. Ct. Mar. 29, 2012) .............................18

*Contec Corp. v. Remote Solution, Co., Ltd.*,
398 F.3d 205 (2d Cir. 2005) ..................................................................................10, 11, 12, 13

*Continental U.K. Ltd. v. Anagel Confidence Compania Naviera, S.A.*,
658 F. Supp. 809 (S.D.N.Y. 1987) ......................................................................................17

*Davis v. CR Fitness Holdings, LLC*,
Case No. 8:23-cv-02333, ECF No. 41 (M.D. Fla. filed May 31, 2024) .................................3

*Dean Witter Reynolds, Inc. v. Byrd,*
    470 U.S. 213 (1985)................................................................................6, 12

*Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.,*
    9 F.3d 1060 (2d Cir. 1993)..............................................................................18

*Doctor's Assocs., Inc. v. Alemayehu,*
    934 F.3d 245 (2d Cir. 2019)..............................................................................7

*Fedotov v. Peter T. Roach & Assocs., P.C.,*
    No. 03-CV-8823 (CSH), 2006 WL 692002 (S.D.N.Y. Mar. 16, 2006)..................................18

*Ferron v. Precision Directional Servs., Inc.,*
    No. 4:20-cv-3123, 2021 WL 6618657 (S.D. Tex. Sept. 21, 2021).........................................14

*Frost Nat. Bank v. L&F Distributors, Ltd.,*
    165 S.W.3d 310 (Tex. 2005)............................................................................15

*Fteja v. Facebook, Inc.,*
    841 F.Supp.2d 829 (S.D.N.Y. 2012).....................................................................9

*Gonzalez v. Don King Prods.,*
    17 F.Supp.2d 313 (S.D.N.Y. 1998) ....................................................................15

*Grigson v. Creative Artists Agency LLC*
    210 F.3d 524 (5th Cir. 2000) ..........................................................................18

*Henry Schein, Inc. v. Archer & White Sales, Inc.,*
    586 U.S. 63 (2019)........................................................................7, 10, 11, 12

*JLR Global, LLC v. PayPal Holding Co.,*
    No. 4:22-CV-559, 2023 WL 2527158 (E.D. Tex. Mar. 15, 2023) ......................................8, 9

*Jody James Farms, JV v. Altman Group, Inc.,*
    547 S.W.3d 624 (Tex. 2018).............................................................................14

*Kai Peng v. Uber Techs., Inc.,*
    237 F. Supp. 3d 36 (E.D.N.Y. 2017) ....................................................................7

*Kaiser v. StubHub, Inc.,*
    No. 1:24-cv-00044 (JLR), 2024 WL 3445059 (S.D.N.Y. July 17, 2024) ...............................19

*Lapina v. Men Women N.Y. Model Mgmt. Ltd.,*
    86 F. Supp. 3d 277 (S.D.N.Y. 2015).....................................................................13

*Laumann v National Hockey League,*
    989 F. Supp. 2d 329 (S.D.N.Y. 2013)...................................................................17

*Levine v. New York State Police*,
   No. 1:21-cv-1181, 2022 WL 1987845 (N.D.N.Y. June 6, 2022) ...........................................21

*Martinez v. Experian Info. Solutions, Inc.*,
   No. 3:24-CV-0744-X, 2024 WL 3906775 (N.D. Tex. Aug. 22, 2204) ....................................9

*May v. Expedia, Inc.*,
   No. A-16-CV-1211-RP, 2018 WL 4343445 (W.D. Tex. July 19, 2018)................................9

*Merrill Lynch Intl. Fin., Inc. v Donaldson*,
   27 Misc. 3d 391 (N.Y. Sup. Ct. 2010) ...................................................................................18

*Meyer v. Uber Technologies, Inc.*,
   868 F.3d 66 (2d Cir. 2017)................................................................................... *passim*

*Oestreicher v. Equifax Info. Servs., LLC*,
   No. 23-CV-00239 (PER), 2024 WL 1199902 (E.D.N.Y. Mar. 20, 2024)............................16

*Oppenheimer & Co. v. Neidhardt*,
   56 F.3d 352 (2d Cir. 1995)........................................................................................7

*Pennzoil Exploration and Production Co. v. Ramco Energy Ltd.*,
   139 F.3d 1061 (5th Cir. 1998) .............................................................................................19

*Prudential Secs. Inc. v. Marshall*,
   909 S.W.2d 896 (Tex. 1995)................................................................................................19

*Rent-A-Ctr., W., Inc. v. Jackson*,
   561 U.S. 63 (2010)...............................................................................................................10

*Saizhang Guan v. Uber Techs., Inc.*,
   236 F. Supp. 3d 711 (E.D.N.Y. 2017) .................................................................................12

*Schnabel v. Trilegiant Corp.*,
   697 F.3d 110 114-16 (2d Cir. 2021) ......................................................................................6

*Scott v. Grim*,
   No. 05-23-01250-CV, 2024 WL 4532963 (Tex. Ct. Ap. Oct. 21, 2024)................................14

*Smith v. Spizzirri*,
   601 U.S. 472 (2024)........................................................................................................6, 21

*Specht v. Netscape Commc'ns Corp.*,
   306 F.3d 17 (2d Cir. 2002)......................................................................................................7

*Taylor Morrison of Tex., Inc. v. Ha*,
   660 S.W.3d 529 (Tex. 2023)................................................................................................19

iv

*TotalEnergies E&P USA, Inc. v. MP Gulf of Mexico, LLC*,
    667 S.W.3d 694 (Tex. 2023) ................................................................................11

*Ward v. American Airlines, Inc*.,
    498 F. Supp. 3d 909 (N.D. Tex. 2020) ...............................................................18

*In re Weekley Homes, L.P.*,
    180 S.W.3d 127 (Tex. 2005) ...............................................................................18

*Whitt v. Prosper Funding LLC*,
    No. 1:15–cv–136–GHW, 2015 WL 4254062 (S.D.N.Y. July 14, 2015) ...............9

*Wu v. Uber Techs., Inc.*,
    No. 90, 2024 WL 4874383, 2024 NY Slip Op. 5869 (N.Y. Nov. 25, 2024) .................8, 9, 12

**Statutes**

9 U.S.C. § 2 ...................................................................................................................6

9 U.S.C. § 3 .............................................................................................................1, 2, 21

9 U.S.C. § 4 ................................................................................................................1, 2

**Other Authorities**

Federal Rule of Civil Procedure 12 ..............................................................................1

American Arbitration Association, Commercial Arbitration Rule 7(a) .....................5, 11

American Arbitration Association, Commercial Arbitration Rule 14(a) ....................5, 11

Defendants Crunch Holdings, LLC, Crunch Franchising, LLC, and Crunch, LLC (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion, pursuant to Federal Rule of Civil Procedure 12 and Sections 3 and 4 of the Federal Arbitration Act, *see* 9 U.S.C. §§ 3, 4, to compel arbitration and or dismiss or stay this proceeding pending resolution of the arbitration.

### PRELIMINARY STATEMENT

Plaintiffs are suing the three Defendants—collectively referred to as "Defendants" or "Crunch" throughout the First Amended Complaint ("Complaint" or "FAC")—for vicarious or derivative liability for calls Plaintiffs allegedly received in violation of the Telephone Consumer Protection Act ("TCPA"). But Plaintiffs are both members of Crunch franchises, and in their membership agreements, they agreed to resolve ***any*** disputes with Defendants by individual, binding arbitration. Plaintiffs also agreed that any questions relating to the scope or validity of their agreement arbitrate would be decided by an arbitrator, not the Court. Thus, the only matter for this Court to decide under Second Circuit law is whether there is a contract containing an arbitration provision (which there clearly is).

As set forth below, when Plaintiffs signed up to their memberships on the Crunch website, www.crunch.com (the "Website"), they agreed to the "Membership Terms & Conditions" displayed clearly and conspicuously on the Website:



1

*See* Declaration of Chad Waetzig ("Waetzig Decl."), filed concurrently herewith, at ¶¶ 6-7. These Membership Terms & Conditions—which contain an arbitration agreement—were hyperlinked on the webpage, and Plaintiffs both clicked on the button, "I agree to the Membership Terms & Conditions." *Id.* In these Membership Terms & Conditions, the parties agreed to arbitrate their disputes, and also agreed that any disagreement over the scope or interpretation of their arbitration agreement would need to be resolved by the arbitrator. *See* Waetzig Decl. at Exhibit B ("Exhibit B") at pp. 4, 9-10.[1]

This form of "clickwrap" agreement is clearly enforceable: The Second Circuit has found that "[c]ourts routinely uphold clickwrap agreements for the principal reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree.'" *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 75 (2d Cir. 2017). Accordingly, pursuant to Sections 3 and 4 of the Federal Arbitration Act, *see* 9 U.S.C. §§ 3, 4, Defendants respectfully request that the Court compel arbitration of this matter and stay this action pending the arbitration.

## BACKGROUND[2]

Plaintiffs filed this suit against Defendants based on their allegation that, on October 6, 2023, they each "received at least one unsolicited telephone call containing a prerecorded voice that promoted and advertised the sale of memberships to a Crunch Fitness gym." FAC ¶¶ 6, 10. They claim that they never provided their consent to authorize these calls. *Id.* ¶¶ 7, 11. They do

---

[1] Defendants note that the membership agreement Plaintiffs agreed to, and which is attached to the Waetzig Declaration, differs from the forms submitted in connection with their pre-conference letter. In preparing this Motion and Memorandum of Law, Defendants determined that, based on the specific dates Plaintiffs visited the Crunch website and agreed to the membership terms and conditions, the version attached to the Waetzig Declaration was the version they agreed to (and which was available at the hyperlink) when signing up for their membership. In any event, both agreements include delegation clauses of all issues relating to arbitrability, and thus the sole issue under either agreement is the issue of assent to the agreement.

[2] For the purposes of this motion, Defendants accepts Plaintiffs' factual allegations as true. Defendants reserve and do not waive their right to advance additional defenses to Plaintiffs' claims and allegations should the motion to compel arbitration be denied, and reserve and do not waive their right to challenge the truth of the facts as alleged by Plaintiffs.

not allege that Defendants made these calls—in fact, they know Defendants did not, as their counsel has already brought an identical putative class action, based on the same purported October 6 call, in Florida, against the Crunch franchise that allegedly placed the calls. *See Davis v. CR Fitness Holdings, LLC*, Case No. 8:23-cv-02333, ECF No. 41 at ¶ 23 (alleging a prerecorded call to plaintiff on "October 6, 2023") (M.D. Fla. filed May 31, 2024). Plaintiffs did not sue the franchisee in this case (although that franchisee clearly would be an indispensable party if this case proceeded)—instead, they have brought a claim against affiliated entities that they allege "tightly and systematically control, govern, and direct, in a uniform manner, the marketing activities of all Crunch franchisees." FAC ¶ 34.[3]

Plaintiffs' claims against Defendants, however, are subject to individual arbitration under their respective memberships. Even if they received the calls alleged in the Complaint, they received those calls only after they voluntarily provided their cellphone numbers and other information to the Crunch franchise in order to reserve a specific membership rate and as part of their signup for their membership on the Crunch Website. The details of their agreements are set forth below.

### A.    Plaintiff Pania

On or about June 28, 2023, Ms. Pania visited the rate reservation page on Crunch's Website (https://info.crunch.com/rate-reservations) and signed up to reserve a rate as part of a sign up for a membership at a Crunch franchise. Waetzig Decl. ¶ 6. Thereafter, on or about January 1, 2024, Ms. Pania signed up for a membership with the Allen, Texas franchise of Crunch on the Website. *Id.* She provided her name, address, cellphone number, and other information as part of completing

---

[3] Plaintiffs allege that Defendants Crunch Franchising, LLC and Crunch, LLC are "wholly owned subsidiary[ies] of Defendant Crunch Holdings, LLC." FAC ¶ 16, 19. The Crunch brand includes hundreds of franchised and corporate-owned fitness clubs throughout the country. *See* Waetzig Decl. ¶ 5.

her online membership agreement. *Id.* When signing up, Ms. Pania (like any new member) was required to click and agree to the following language before a membership is created:



*See id.*; *see also* Waetzig Decl. at Exhibit A. As reflected in the screenshot above, the phrase "I agree to the Membership Terms & Conditions" appeared in bold when Plaintiffs signed up on the Website. "Membership Terms & Conditions" appeared in blue to show that it was a hyperlinked term where, by clicking anywhere on that term, Plaintiffs were able to review the terms and conditions of their membership before agreeing to that membership.

### B.    Plaintiff Al-Nurridin

On or about September 4, 2023, Ms. Al-Nurridin visited the rate reservation page on Crunch's Website (https://info.crunch.com/rate-reservations) and signed up reserve a rate to sign up for a membership at a Crunch franchise. *Id.* at ¶ 7. Thereafter, on or about October 7, 2023, Ms. Al-Nurridin signed up for a membership with the Plano, Texas franchise of Crunch on the Website. *Id.* She provided her name, address, cellphone number, and other information as part of completing her online membership agreement. *Id.* When signing up, Ms. Al-Nurridin was required to click and agree to the same language, presented with the same bold and hyperlinked language, as shown above with respect to Ms. Pania. *Id.*

### C.    Plaintiffs' Agreements

The Terms & Conditions Plaintiffs agreed to (the "Terms") contains disclosures, using capitalized and bolded letters in separately identified paragraphs, that Plaintiffs are agreeing to

individual arbitration (the "Arbitration Agreement"). *See* Exhibit B at 4, 9-10. First, the Terms state in capitalized letters: "IN THE EVENT OF ANY DISPUTE BETWEEN YOU AND CRFH ('CRFH' AS USED IN THIS PROVISION MEANS CR FITNESS HOLDINGS, LLC, CRUNCH FITNESS, ITS AFFILIATES, AND THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES AND AGENTS), YOU AND CRFH CONSENT TO ARBITRATE THAT DISPUTE BEFORE A SINGLE ARBITRATOR UNDER THE THEN CURRENT RULES OF THE AMERICAN ARBITRATION ASSOCIATION." *Id.* at 4. Second, the Terms later include two additional provisions further specifying that this agreement to arbitrate includes (1) "a dispute, claim, or controversy between you and Crunch (or its affiliates) relating to the rate reservation promotion, your agreement to receive SMS text alerts from Crunch, these Terms & Conditions, or the validity or enforceability of this Arbitration Agreement, whether those claims arise in contract, law, tort, or equity," and (2) *any other* complaint that cannot be informally resolved. *Id.* at 9-10 (*see* "Dispute Resolution" paragraph).[4]

In their Arbitration Agreement, Plaintiffs also agreed to delegate to an arbitrator any dispute concerning the "validity" or "[]enforce[ability]" of the Arbitration Agreement. *Id.* at 4, 9-10. The parties also agreed to use the rules of the American Arbitration Association ("AAA"), *see id.*, which similarly delegate questions of arbitrability to the arbitrator. *See, e.g.,* Rule 7(a), AAA Commercial Arbitration Rules ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."); Rule 14(a), AAA

---

[4] Crunch does not have any record of either Plaintiff opting out of their agreement to arbitrate disputes with Crunch. Waetzig Decl. ¶ 13.

Consumer Arbitration Rules (same). Finally, Plaintiffs' agreements included a jury trial waiver and class waiver. Exhibit B at 9-10.[5]

## DISCUSSION

### I.    LEGAL STANDARD

Section 2 of the Federal Arbitration Act ("FAA") provides that an arbitration agreement provision in any contract involved in interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011). The FAA applies to any arbitration agreement that is "written" and that is in a contract evidencing "a transaction involving commerce." 9 U.S.C. § 2; *see Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) ("[T]he term 'involving commerce' in the FAA [is] the functional equivalent of the more familiar term 'affecting commerce'–words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power.").[6] Once a court determines that the parties to a litigation agreed to arbitrate, the FAA gives the court no discretion; rather, it must compel the parties to arbitrate and stay the action pending the outcome. *See Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

While under the FAA, courts ordinarily determine whether a particular dispute falls within the scope of an arbitration provision, "parties may agree to have an arbitrator decide not only the

---

[5] In both Terms & Conditions, Plaintiffs agree to, among other things, "receive calls, emails, and texts" from Crunch, ABC Fitness Solutions, LLC (Crunch's third-party vendors), and their agents and affiliates), including calls using "an automatic telephone dialing system or an artificial or prerecorded voice." *See* Exhibit B at 1. Plaintiffs, based on their allegations, are disputing whether they consented to such communications under the TCPA. FAC ¶¶ 7, 11.

[6] Both criteria are met here: (i) the parties' agreement are in writing and (ii) Plaintiff's membership in a national brand of fitness clubs and online services, including her use of the Website and agreement to receive calls and emails (which plainly involve means of interstate commerce), implicate and affect commerce. *See, e.g., Schnabel v. Trilegiant Corp.*, 697 F.3d 110 114-16 (2d Cir. 2021) (applying FAA to membership in online programs); *see also* Exhibit B at 4 ("YOU AND CRFH ALSO AGREE THAT THE FEDERAL ARBITRATION ACT GOVERNS THE ARBITRABILITY OF ALL DISPUTES BETWEEN YOU AND CRFH.") (emphasis in original).

merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67-68 (2019) (cleaned up). Where an arbitration agreement "delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Id.* at 69; *see also Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 251 (2d Cir. 2019) ("[W]e first look to see if an agreement to arbitrate was formed, then determine if it contains a delegation clause."). In deciding a motion to compel arbitration, a court should consider all evidence "submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, and must draw all reasonable inferences in favor of the non-moving party." *Id*. In order to defeat arbitration, "it is not sufficient for the party opposing arbitration to utter general denials of the facts on which the right to arbitration depends." *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995).

## II.    PLAINTIFFS SHOULD BE COMPELLED TO ARBITRATE THEIR CLAIMS ON AN INDIVIDUAL BASIS

Here, the record demonstrates that Plaintiffs formed a contract in which they agreed to arbitrate disputes with Defendants, and that the parties agreed to delegate any issues of arbitrability regarding the Arbitration Agreement to the arbitrator—thus, Plaintiffs cannot raise arbitrability issues or litigate whether their dispute is within the scope of their Arbitration Agreement at this stage. *See Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 52-53, 60 (E.D.N.Y. 2017). Accordingly, arbitration should be compelled.

### A.    Plaintiffs Agreed to Arbitrate Their Claims on an Individual Basis by Assenting to the Terms and Conditions of Their Membership

"[A] court should generally apply state-law principles to the issue of contract formation." *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 29 (2d Cir. 2002); *see also Meyer*, 868 F.3d at 74 (same). Under New York law, to form a contract "there must be '[m]utual manifestation of

assent, whether by  written or spoken word or by contract." *Id.* (quoting *Specht*, 306 F.3d at 29).[7]

Last week, the New York Court of Appeals squarely held as a matter of New York law that a

"clickwrap process . . . satisf[ies] the requirements for formation of an agreement to arbitrate." *Wu*

*v. Uber Techs., Inc.*, No. 90, 2024 WL 4874383, 2024 NY Slip Op. 5869 (N.Y. Nov. 25, 2024);

*see also id.* at *9 ("Uber's clickwrap process satisfied the contract-formation requirements of offer

and acceptance. Although plaintiff's accusations of misrepresentations or unconscionable conduct

may raise questions as to the enforceability of the provision of the arbitration agreement purporting

to cover preexisting claims, the Supreme Court has made clear that those are not formation

questions."); *id.* at *1 ("We conclude that the 'clickwrap' process Uber used to solicit plaintiff's

assent resulted in the formation of an agreement to arbitrate.").  The Second Circuit had correctly

predicted New York law on that score, observing that manifestation of assent can be demonstrated

by an acceptance "click" on a website: "'Courts around the country have recognized that [an]

electronic 'click' can suffice to signify the acceptance of a contract,' '. . . as long as the layout and

language of the site give the user reasonable notice that a click will manifest assent to an

agreement.'" *Meyer*, 868 F.3d at 75 (citation omitted)).

Courts reviewing website-based agreements have distinguished them by "the manner in

which the user manifests assent—namely, 'clickwrap' (or 'click-through') agreements, which

require users to click an 'I agree' box after being presented with a list of terms and conditions of

use, or 'browsewrap' agreements, which generally post terms and conditions on a website via a

hyperlink at the bottom of the screen. *Meyer*, 868 F.3d at 75. The distinguishing feature of a

---

[7] Plaintiff's membership agreement includes a choice of law provision for Texas law, but  courts will not "[r]ely[] on [a contract's choice-of-law] provision before a contract has been found to have been accepted by the parties as binding." *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 387 (E.D.N.Y. 2015). This brief includes discussions of both New York and Texas law, as Texas law is in accord on all points relevant to the issues set forth herein. *See, e.g., JLR Global, LLC v. PayPal Holding Co.*, No. 4:22-CV-559, 2023 WL 2527158, at *2 (E.D. Tex. Mar. 15, 2023) (enforcing "clickwrap" agreement).

clickwrap agreement is "[a]n electronic 'click,'" which "can signify assent [to a web-based agreement, as required for the agreement to be an enforceable contract under New York law], so long as the interface gives the user reasonable notice that the 'click' will manifest assent to an agreement." *Coe v. Coca-Cola Company*, 702 F. Supp. 3d 140, 156-57 (W.D.N.Y. 2023). Such agreements are "routinely upheld." *Meyer*, 868 F.3d at 75 (citing cases); *see, e.g., Coe*, 702 F. Supp. 3d at 156-57 (enforcing clickwrap agreement); *Whitt v. Prosper Funding LLC*, No. 1:15–cv–136–GHW, 2015 WL 4254062, at *4 (S.D.N.Y. July 14, 2015) (same); *Fteja v. Facebook, Inc*., 841 F.Supp.2d 829, 837 (S.D.N.Y. 2012) (collecting cases).[8]

Here, Plaintiffs agreed to an enforceable clickwrap agreement when they signed up for their membership on the Website. As demonstrated above, *see supra* at p.4 (citing Waetzig Decl. at Exhibit A), Plaintiffs assented to the Membership Terms & Conditions containing their Arbitration Agreement by clicking next to the phrase "I agree to the Membership Terms & Conditions," which appeared in bold and with a prominent hyperlink that allowed them to review the terms of their agreement. *Id.* The term "Membership Terms & Conditions" appeared in blue to show that it was a hyperlinked term where, by clicking anywhere on that term, Plaintiffs were able to review the terms and conditions their her membership before agreeing to that membership, which required an electronic "click" to manifest their assent before completing their purchase. *Id.*

The Court of Appeals just held in *Wu* that a materially indistinguishable click wrap agreement is enforceable. *See* 2024 WL 4874383, at *2 ("The uncluttered screen encouraged plaintiff to review the new terms of use and included a hyperlink to those terms indicated by

---

[8] "Courts within Texas routinely enforce agreements that are acknowledged in this [clickwrap assent] manner." *Martinez v. Experian Info. Solutions, Inc.*, No. 3:24-CV-0744-X, 2024 WL 3906775, at *2 and n.18 (N.D. Tex. Aug. 22, 2204); *see also JLR Global LLC*, 2023 WL 2527158, at *4 ("In clickwrap agreements, an affirmative click is deemed an actual signature that binds the parties."); *May v. Expedia, Inc*., No. A-16-CV-1211-RP, 2018 WL 4343445, at *3 (W.D. Tex. July 19, 2018) (same).

underlined and blue text. Toward the bottom of the screen was a checkbox and, to its immediate right, bolded text stating: 'By checking the box, I have reviewed and agreed to the Terms of Use and acknowledge the Privacy Notice.' Immediately beneath this was a large black button labeled 'Confirm.' It is undisputed that plaintiff checked the box and clicked the 'Confirm' button."). Even prior to *Wu*, the Second Circuit and courts within this Circuit had consistently held the same way. *See*, *e.g.*, *Meyer*, 868 F.3d at 78 (holding a clickwrap agreement with a hyperlink enforceable after noting that internet users know "that text that is highlighted in blue and underlined is hyperlinked to another webpage where additional information will be found"); *Coe*, 702 F. Supp. 3d at 156-57 (similar).[9] Accordingly, the Arbitration Agreement Plaintiffs agreed to when they agreed to their memberships on Crunch's website is enforceable.

**B.      Plaintiff Agreed to Delegate Any Questions of Arbitrability to the Arbitrator**

The Supreme Court has held that "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc.*, 586 U.S. at 67-68 (cleaned up). Where an arbitration agreement "delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Id*. at 69; *accord Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). Likewise, where, as here, the parties expressly incorporate the rules of an arbitration administrator "that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp. v. Remote Solution, Co., Ltd.*, 398

---

[9] The Second Circuit in *Meyer* rejected the argument that "the location of the arbitration clause within the Terms and Conditions" rendered it unenforceable, finding that, "[a]lthough the contract terms are lengthy and must be reached by a hyperlink, the instructions are clear and reasonably conspicuous." 868 F.3d at 79.

F.3d 205, 208, 210-11 (2d Cir. 2005) (enforcing AAA Rules' delegation provision given that the contract containing the arbitration clause incorporated those rules by reference).[10]

Here, Plaintiffs agreed to delegate any issue relating to the arbitrability of their dispute to an arbitrator. *See supra* at pp. 3-4; *see also* Exhibit B at 4, 9-10 (delegating any questions of arbitrability to the arbitrator). Plaintiff also agreed to use the rules of the AAA, *see id.*, which similarly  delegate questions of scope of arbitrability to the arbitrator. *See, e.g.,* Rule 7(a), AAA Commercial Arbitration Rules ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."); Rule 14(a), AAA Consumer Arbitration Rules (same). Accordingly, any arguments raised by Plaintiffs with respect to whether their claims are covered by their Arbitration Agreement must be arbitrated. *Henry Schein, Inc.*, 586 U.S. at 69; *Contec Corp.*, 398 F.3d at 211 (same).

### 1.    Plaintiffs cannot avoid their agreement to delegate issues of arbitrability by challenging the Arbitration Agreement.

In Plaintiffs' pre-conference submission to the Court, ECF No. 21, Plaintiffs stated that they intended to oppose Defendants' Motion because, they claimed, the Arbitration Agreement (1) should be voided for indefiniteness because it does not identify who the counterparty is, (2) does not inure for the benefit of Defendants, and (3) does not cover their claims. But each of these arguments go to questions of arbitrability that Plaintiffs ***must present to the arbitrator***. Not only did Plaintiffs expressly delegate any questions regarding "the validity or enforceability of this Arbitration Agreement" to the arbitrator and agree that the AAA's rules (which also provide for

---

[10] *See also TotalEnergies E&P USA, Inc. v. MP Gulf of Mexico, LLC*, 667 S.W.3d 694, 708 (Tex. 2023) ("We agree with the vast majority of courts that, as a general rule, an agreement to arbitrate in accordance with the AAA or similar rules constitutes a clear and unmistakable agreement that the arbitrator must decide whether the parties' disputes must be resolved through arbitration.").

delegation of arbitrability questions) shall apply, Exhibit B at 4, 9-10, but this delegation language expressly covers disputes with "***Crunch (or its affiliates).***" *Id.* at 9 (emphasis added); *see also id.* at 4 (agreeing that the AAA's rules apply to disputes between Plaintiff and "CR FITNESS HOLDINGS, LLC, CRUNCH FITNESS, [OR] ITS AFFILIATES") (emphasis in original).

"[A]s a signatory to a contract containing an arbitration clause and incorporating by reference the AAA Rules, [Plaintiff] cannot now disown its agreed-to obligation to arbitrate all disputes, including the question of arbitrability." *Contec Corp.*, 398 F.3d at 209. The FAA, not state law, "governs the analysis of whether questions of arbitrability have been delegated." *Saizhang Guan v. Uber Techs., Inc.*, 236 F. Supp. 3d 711, 727 (E.D.N.Y. 2017) (citing *Rent-A-Center, W.*, 561 U.S. at 70). And Section 4 of the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Byrd*, 470 U.S. at 218, 105 (emphasis in original); *see also Wu*, 2024 WL 4874383, at *1 ("Moreover, a key term of that agreement expressly delegates to an arbitrator the exclusive authority to resolve all disputes as to the applicability and enforceability of the agreement. Because plaintiff has not established that the delegation provision is invalid, her challenges to the portions of the agreement that purportedly apply to pending legal claims were properly directed to the arbitrator.").

Thus, because Plaintiffs have expressly delegated all questions regarding arbitrability to the arbitration, the Court should decline to consider Plaintiffs' arguments regarding indefiniteness or voidness, scope, and whether the Arbitration Agreement benefits Defendants. *See Rent-A-Center, W.*, 561 U.S. at 63, 69-70 (delegation clause controlled voidness challenges to arbitration agreement); *Henry Schein, Inc.*, 586 U.S. at 69 (arguments regarding whether claims are covered by an arbitration clause are delegated to arbitrator); *AF Trucking Inc. v. Bus. Fin. Servs., Inc.*, No.

19-CV-8149 (CS), 2020 WL 2765678, at *5 (S.D.N.Y. May 28, 2020) (voidness and scope challenge subject to delegation clause); *Contec Corp.*, 398 F.3d at 209 ("[N]either we nor the district court must reach the question whether [signatory to the arbitration agreement] is estopped from avoiding arbitration with [non-signatory] because, under the 1999 Agreement, the circumstances indicate that arbitration of the issue of arbitrability is appropriate."); *Lapina v. Men Women N.Y. Model Mgmt. Ltd.*, 86 F. Supp. 3d 277, 284 (S.D.N.Y. 2015) ("[W]here a party seeking to avoid arbitration is a signatory to an arbitration agreement which incorporates rules that delegate arbitrability questions to the arbitrator, a court need not reach the issue of whether a non-signatory may compel arbitration, because that is an issue properly resolved by the arbitrator.").

      **2.**      **Plaintiffs should not be permitted to avoid their agreement to delegate issues of arbitrability to the arbitrator by arguing that those issues are formation issues.**

Plaintiffs may try to argue that issues relating to whether the agreement inures to the benefit of Defendants or is too indefinite are "formation" and not arbitrability issues, but Supreme Court and Second Circuit precedents foreclose those arguments. Under the FAA, the Second Circuit has held that a party's right to enforce an arbitration agreement against a signatory, where it is challenged as a nonsignatory or otherwise, "is a matter of the Agreement's continued existence, validity, and scope, and is therefore subject to arbitration" where there is a delegation of arbitrability issues. *Contec Corp.*, 398 F.3d at 209. Consistent with the cases cited *supra* at 12-13 (quoting *Rent-A-Center W.*, *Henry Schein*, and *AF Trucking*), the same is true for validity or voidness challenges. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006) ("the issue of the contract's validity is considered by the arbitrator in the first instance"). Thus, Plaintiffs cannot attempt to recast their arguments, which are subject to delegation to the arbitrator, as challenges to the formation of the Arbitration Agreement, which is the lone issue before this

Court, *supra* § II.A.[11] Regardless, and without waiver of the parties' agreement to delegate these issues to the arbitrator, Defendants can briefly demonstrate why Plaintiffs' arguments are meritless under the parties' agreement and settled law.

Plaintiffs have chosen to sue three affiliated Defendants (without suing the franchisee that allegedly placed the calls) based on some sort of derivative or vicarious liability theory. Defendants are conflated throughout the FAC and Plaintiffs expressly allege that Defendants together "tightly and systematically control, govern, and direct, in a uniform manner, the marketing activities of all Crunch franchisees." FAC ¶ 34. But each of those Defendants are entitled to enforce the Arbitration Agreements because the Arbitration Agreement broadly refers to disputes not only the franchisee owning the club that Plaintiffs joined (CR Fitness Holdings, LLC), but also Crunch and any *affiliates*. *See* Exhibit B at 4 (requiring arbitration of "ANY DISPUTE BETWEEN YOU AND CRFH ('CRFH' AS USED IN THIS  PROVISION MEANS CR FITNESS HOLDINGS, LLC, *CRUNCH FITNESS, ITS AFFILIATES*, AND THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES AND AGENTS). . . .") (emphasis in original). And each of the subsequent references to this Arbitration Agreement in the Terms likewise reinforce Plaintiffs' agreement to arbitrate disputes not only just with her local club, but ***Crunch and its affiliates***

---

[11] Although the Texas Supreme Court has said that it views delegation clauses differently "when a dispute arises between a party to the arbitration agreement and a non-signatory," *Jody James Farms, JV v. Altman Group, Inc.*, 547 S.W.3d 624, 632 (Tex. 2018), that analysis has no relevance here for at least four reasons. First, the FAA, not state law, governs issues of arbitrability. *See supra* at 11 (citing cases). Second, the Court should not apply the Texas choice of law provision in the Terms when considering whether a contract has been formed. *See supra* at 6 n.4 (citing cases). Third, the parties specifically agreed that, as to the Arbitration Agreement, the FAA (not Texas law) would govern *all* issues of arbitrability. Exhibit B at 4, 9. And fourth, courts in Texas have consistently distinguished this holding as involving a fact pattern where the arbitration agreement and delegation language are specifically restricted to the parties. Courts in Texas have said the holding does not apply where, as here, a non-signatory is trying to compel a signatory to arbitration (Plaintiffs cannot claim that they are not a signatory), and the Arbitration Agreement (and delegation language) is already extended to nonsignatories. *Ferron v. Precision Directional Servs., Inc.*, No. 4:20-cv-3123, 2021 WL 6618657, at *7 (S.D. Tex. Sept. 21, 2021) (*Jody Farms* does not apply where "the arbitration agreement "clearly and unmistakably creates third-party beneficiaries," or "a non-signatory here is attempting to compel a signatory to arbitration"); *Scott v. Grim*, No. 05-23-01250-CV, 2024 WL 4532963, at *3 (Tex. Ct. Ap. Oct. 21, 2024) (concerns in *Jody Farms* "do not exist when it is the non-signatory who is attempting to enforce the arbitration provision").

generally. *See id.* at 9-10 ("In the event that there is a dispute, claim, or controversy between **you and Crunch (or its affiliates)** relating to the rate reservation promotion, your agreement to receive SMS text alerts from Crunch, these Terms & Conditions, or the validity or enforceability of this Arbitration Agreement . . . .") (emphasis added).[12] The challenges Plaintiffs have offered to this language—that it is "indefinite" because a counterparty is not named, and that it purportedly does not cover Defendants—are both specious.

    *First*, the Terms themselves expressly state, "THE CLUB IS THE OWNER OF THIS FACILITY AND FITNESS CENTER OPERATION AND HAS BEEN LICENSED BY AN AFFILIATE OF CRUNCH, LLC TO USE THE CRUNCH FITNESS MARKS IN CONNECTION WITH ITS OPERATION." Exhibit B at 12 (emphasis in original). Although their pre-conference letter suggests that they suddenly have some confusion as to which "Club" they agreed to join, *see* ECF No. 21 at 2,  they clearly understood which local club they were joining—they signed up to receive promotional calls about their  local club, *see* Waetzig Decl. ¶¶ 6-7 their local club would have been identified on the checkout page of on the Crunch website, *see* Waetzig Decl. at Exhibit A, the clubs using the membership agreement are clearly listed on the agreement, *see* Exhibit B, and after joining Crunch, they visited and used the facilities at their local club, *see* Waetzig Decl. ¶ 8. The Court should reject any suggest that, even if this issue was not delegated to the arbitrator, it could or should void a contract that, in their pre-conference letter, they do not denied that they read and agreed to as part of the actions that led to their claims.[13]

---

[12] The clickwrap agreement and Terms both make clear that Plaintiff is agreeing to the Terms of the local club she is joined. In the clickwrap agreement, it expressly states, "Click on Membership Terms & Conditions above for applicable charge date *or contact your club*." Waetzig Decl. at Ex. A (emphasis added).

[13] Any attempt to void the contract for "indefiniteness" is also contrary to the general principle that courts should be reluctant to strike down contracts for indefiniteness—especially where the plaintiff is not challenging that a contract was agreed to—and that should attempt to ascertain the intent of the parties and fill in missing terms if possible. *Gonzalez v. Don King Prods.,* 17 F.Supp.2d 313, 314-15 (S.D.N.Y. 1998) (holding that refusing to enforce a contract as indefinite and meaningless "'is at best a last resort'") (quoting *166 Mamaroneck Ave. Corp. v. 151 E. Post Rd. Corp.*, 78 N.Y.2d 88, 91, 571 N.Y.S.2d 686, 688 (1991)); *see Frost Nat. Bank v. L&F Distributors, Ltd.*, 165 S.W.3d

Moreover, as Plaintiffs fully understood, their membership agreement with their local franchisee also broadly provides them benefits across the Crunch brand, including the use of any Crunch clubs and classes. *See* Waetzig Decl. at ¶ 4. As part of these Terms, as well as the fact that Plaintiff is receiving benefits across the Crunch brand (and many clubs), Crunch and its affiliates are specifically referenced in several provisions in the Terms, including the Arbitration Agreement. Based on the express references to Crunch and its affiliates in the Agreement, Defendants are entitled to enforce the Arbitration Agreement. *See Alvarez v. Experian Info. Solutions, Inc.*, 661 F. Supp. 3d 18, 27 (E.D.N.Y. 2023) (allowing defendant to enforce arbitration agreement based on references to it in the arbitration agreement); *Oestreicher v. Equifax Info. Servs., LLC*, No. 23-CV-00239 (PER), 2024 WL 1199902, at *5 (E.D.N.Y. Mar. 20, 2024) ("EIS need not be a signatory to the agreement, however; EIS and Plaintiff are bound by the agreement so long as EIS was a party that was properly disclosed at the time of assent.").

**Second**, setting aside the fact that Crunch and its affiliates are expressly referenced as a party to the Arbitration Agreement, settled general principles of contract and agency law make clear that Defendants are entitled to enforce the Arbitration Agreement. Here, Plaintiffs have expressly alleged that they are seeking to hold Defendants liability under an unspecified agency or vicarious liability—the FAC references to them interchangeably as "Defendants" or "Crunch", admits that two are wholly-owned subsidiaries of the other, FAC ¶¶ 16, 19, and alleges that they interchangeably "tightly" control "in a uniform manner" the messages Plaintiffs supposedly received from the Crunch franchise. *Id.* at ¶¶ 32-45. Given their own allegations, Plaintiffs can hardly deny that Defendants should be considered agents and affiliates in a manner wholly

---

310, 311-12 (Tex. 2005) (Texas courts should "construe contracts from a utilitarian standpoint bearing in mind the particular business activity sought to be served and will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive.") (citations and quotations omitted).

consistent with the Terms for purposes of the FAC.[14] And the Terms repeatedly reference Crunch and affiliates, explaining, for example, that Crunch and its affiliates may "contact you via telephone email, text message, or other means," and that Plaintiff is joining a local club that "HAS BEEN LICENSED BY AN BY AN AFFILIATE OF CRUNCH, LLC TO USE THE CRUNCH FITNESS MARKS IN CONNECTION WITH ITS OPERATION." Exhibit B at 8, 12. The references to Crunch and "affiliates" in the Arbitration Agreement underscore the parties' intent for their agreement to include Defendants, and Plaintiff can hardly claim otherwise, given that she used Crunch's Website to sign up for her membership with the understanding that she was joining the Crunch brand and could use its facilities and services. *See Continental U.K. Ltd. v. Anagel Confidence Compania Naviera, S.A.*, 658 F. Supp. 809, 813 (S.D.N.Y. 1987) (if a "party's arbitration clause is expressly incorporated into a bill of lading, nonsignatories . . . who are linked to that bill through general principles of contract law or agency law may be bound"); *Laumann v National Hockey League*, 989 F. Supp. 2d 329, 336 (S.D.N.Y. 2013) (non-signatory can be bound to arbitrate where "the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed") (citation omitted).

Based on the express references to Crunch in the Terms, Defendants similarly are entitled to enforce the Arbitration Agreement as a third-party beneficiary of the Arbitration Agreement. Courts have consistently allowed third parties to enforce arbitration agreements where they are either expressly or impliedly referenced in an arbitration agreement or broader set of terms and conditions. *See Bakon v. Rushmore Serv. Ctr., LLC*, No. 16-CV-6137, 2017 WL 2414639, at *3 (E.D.N.Y. June 2, 2017) (affiliate to signatory could enforce arbitration agreement as third-party

---

[14] In fact, the consent to make calls that Plaintiffs seek to challenge was expressly given to Crunch and affiliates. *See* Exhibit B at 1; Exhibit C at 1; *see also* Exhibit B at 9 and Exhibit C at 23 (Plaintiffs agreed to calls from "Crunch and ABC Fitness Solutions, LLC, including its agents, affiliates, and vendors").

beneficiary where agreement referenced "affiliates" ); *Fedotov v. Peter T. Roach & Assocs., P.C.*, No. 03-CV-8823 (CSH), 2006 WL 692002, at *2 (S.D.N.Y. Mar. 16, 2006) (language in arbitration agreement was broad enough to cover nonsignatories as third-party beneficiaries). Here, the Arbitration Agreement expressly names Crunch and its affiliates, and Plaintiff agreed to it after using Crunch's website as part of an attempt to form a relationship with Defendants and the Crunch clubs. *See id.*; *see also Alvarez*, 661 F. Supp. 3d at 27 ("Even if Experian could not enforce the Arbitration Agreement as a party, under a third-party beneficiary theory, Experian may do so.").[15]

Defendants also are entitled to enforce the Arbitration Agreement under principles of equitable estoppel. Equitable estoppel binds a plaintiff to an arbitration agreement where, as here, Plaintiffs have obtained the benefit of their membership but now seek to avoid the terms of those agreements. *See Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.,* 9 F.3d 1060, 1064 (2d Cir. 1993) (plaintiff was estopped from accepting benefits of an agreement but then denying applicability of the arbitration clause).[16] As Plaintiffs knew, they were signing up for a membership that allowed them to use Crunch clubs and services based on the overall Crunch brand, and they agreed to receive calls from Crunch and their local club, and thus should not be permitted to avoid that very same agreement now that they agreed to when they agreed to receive calls from Crunch. *See id.* Basic principles of estoppel and fairness dictate that Defendants entitled to enforce the Arbitration Agreement. *Id.*; *see also Merrill Lynch Intl. Fin., Inc. v Donaldson*, 27 Misc. 3d 391, 396 (N.Y. Sup. Ct. 2010) ("[C]onsent to arbitration has been inferred where the nature of the

---

[15] *See ConocoPhillips Co. v. Graham*, No. 01-11-00503-CV, 2012 WL 1059084, at *6 (Tex. App. Ct. Mar. 29, 2012) (third-party beneficiary was entitled to enforce arbitration agreement; a "third-party beneficiary may be identified in the agreement by class or category or persons, all of whom may not be known to the contracting parties at the time of execution"); *Ward v. American Airlines, Inc.*, 498 F. Supp. 3d 909, 921-22 (N.D. Tex. 2020) (same).

[16] *See also Grigson v. Creative Artists Agency LLC* 210 F.3d 524, 527 (5th Cir. 2000) ("[A]pplication of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.") (citation omitted); *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 134 (Tex. 2005) (similar

relationship between a signatory and nonsignatory indicates that the agreement to arbitrate should be extended in the interest of fairness.").[17]

**Third**, Plaintiffs' attempt to argue that their TCPA claims are outside of that scope of the Arbitration Agreement fails not only because that issue also must be presented to the arbitrator, but because it is contrary to the parties' agreement. The Supreme Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mercury Constr. Corp.*, 460 U.S. at 24-25. Arbitration agreements that contain causes that submit to arbitration "any" or "all" claims arising out of or relating to agreements are the "paradigm of a broad clause," and claims brought are "presumptively arbitrable." *Collins & Aikman Prods. Co. v. Building Sys.*, 58 F.3d 16, 20 (2d Cir. 1995); *see also Kaiser v. StubHub, Inc.*, No. 1:24-cv-00044 (JLR), 2024 WL 3445059, at *4 (S.D.N.Y. July 17, 2024) (describing arbitration clause with "relating in any way to or arising out of" as "relatively broad" and compelling arbitration); *Barton v. Zhang*, No. 23-cv-08536 (LJL), 2024 WL 3228445, at *5 (S.D.N.Y. June 27, 2024) (similar).[18]

Here, the Arbitration Agreements contain exactly the type of broad language that courts have consistently interpreted to find that disputes between parties are presumptively arbitrable. The Arbitration Agreement specifically references "***any*** dispute" with Crunch or its affiliates, Exhibit B at 4, and then goes on to list specific types of disputes, including disputes "relating to the rate reservation promotion, your agreement to receive SMS text alerts from Crunch, [or] these Terms & Conditions," *id.* at 9, and then includes additional language referring to any other

---

[17] *See Taylor Morrison of Tex., Inc. v. Ha*, 660 S.W.3d 529, 533 (Tex. 2023) (equitable estoppel applies where the plaintiff has obtained substantial benefits from the contract containing the arbitration clause).

[18] Texas law is similar. *See Prudential Secs. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995) ("The policy in favor of enforcing arbitration agreements is so compelling that a court should not deny arbitration 'unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'") (quoting *Neal v. Hardee's Food Sys., Inc*., 918 F.2d 34, 37 (5th Cir. 1990)); *Pennzoil Exploration and Production Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998) (clauses with "arising out of or relating to" language are "broad arbitration clauses capable of expansive reach").

"dispute" that the parties cannot resolve, *id* at 9-10. As Plaintiffs themselves admit, the calls they alleged received came in connection with a rate reservation promotion on the Website. *See* FAC ¶¶ 57-64. These calls alleged were received **after** Plaintiffs signed up for the rate reservation promotion. *See* Waetzig Decl. ¶¶ 4-8. Thus, their dispute arises directly out of one of the specifically-enumerated disputes in the Arbitration Agreements.

Moreover, Plaintiffs' allegations expressly put their Membership Agreements at issue, as they are arguing that they did not consent to receive calls from or on behalf of Crunch, FAC ¶¶ 7, 11, 80, a question which will inevitably turn on the consent expressly provided when they signed up to reserve the rate, *see* FAC ¶ 58 n.20 (hyperlink includes consent language),  and agreed to their membership agreements. *See, e.g.*, Exhibit B at 1 ("I consent to receive calls, emails, and texts from Crunch, ABC Fitness Solutions, LLC, (its agents and affiliates). . ." including using "an artificial or prerecorded voice"). Plaintiff's pre-conference argues that the alleged calls were received before they signed their agreements, ECF No. 21 2-3, but the timing of when Plaintiffs allegedly received the call does not matter where the scope of the Arbitration Agreement covers **any** dispute and expressly references the rate reservation program they used **before**  the alleged calls were made. *See Levine v. New York State Police*, No. 1:21-cv-1181, 2022 WL 1987845, at *6 (N.D.N.Y. June 6, 2022) ("[T]he fact that claims at issue arose before the execution of an agreement to arbitration does not necessarily take the claims outside the scope of that arbitration agreement.") (citing *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc*., 198 F.3d 88, 99 (2d Cir. 1999); *Coenen v. R. W. Pressprich & Co.*, 453 F.2d 1209, 1212 (2d Cir. 1972) (the purpose of a clause covering "any dispute" "would be frustrated and in effect nullified if we were to construe such clause as applicable only to 'future' disputes").[19]

---

[19] Courts around the country have ruled similarly. *See Watson Wyatt & Co. v. SBC Holdings, Inc*., 513 F.3d 646, 649–50 (6th Cir. 2008) (requiring arbitration for claims before accruing before agreement); *Kristian v. Comcast Corp*., 446

When an arbitration clause is broad, as it is here, the Supreme Court has held that "in the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT & T Techs., Inc..*, 475 U.S. at 650 (cleaned up). And as the Second Circuit has held, "[i]n determining whether a particular claim falls within the scope of the parties' arbitration agreement, we focus on the allegations in the complaint rather than the legal causes of action asserted." *Bldg. Sys.*, Inc., 58 F.3d at 20–21 (citations omitted). Thus, even if the questions of scope raised by Plaintiffs could be presented to the Court (rather than the arbitrator), because Plaintiffs' allegations clearly touch on matters relating to the parties' agreements, they would be subject to arbitration. *See id.* ("If the allegations underlying the claims 'touch matters' covered by the parties' ... agreements, then those claims must be arbitrated, whatever the legal labels attached to them.").[20]

## III.    THIS ACTION SHOULD BE STAYED PENDING ARBITRATION

Under the Federal Arbitration Act, which is incorporated by the parties' agreements, this action should be stayed while Plaintiffs' individual claims are arbitrated. *See* 9 U.S.C. § 3 (requiring court to issue a stay upon compelling arbitration); *see also Smith*, 601 U.S. at 475-76 (stay mandatory when claims are arbitrable).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court issue an Order compelling arbitration and staying this proceeding pending resolution of the arbitration.

---

F.3d 25, 33–34 & n.5 (1st Cir. 2006) (same); *Zink v. Merrill Lynch Pierce Fenner & Smith, Inc*., 13 F.3d 330, 331–32 (10th Cir. 1993) (same); *see also Levin v. Alms & Assocs., Inc*., 634 F.3d 260, 266–67 (4th Cir. 2011) (same); *In re Verisign, Inc. Derivative Litig*., 531 F. Supp. 2d 1173, 1224 (N.D. Cal. 2007)) (same, and finding where arbitrability is delegated to an arbitrator, the issue must be arbitrated).

[20] The parties' agreements also include a class action waiver. Defendants reserve the right to seek to have Plaintiffs' class action allegations stricken and/or class certification denied based on his waiver of any purported right to file a putative class action.

By: */s/ Elana H. Somers*
Elana H. Somers
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone:  (212) 839-5300
Facsimile:  (212) 839-5599
Email: elana.somers@sidley.com

Ian M. Ross (*pro hac vice*)
SIDLEY AUSTIN LLP
1001 Brickell Bay Drive
Miami, FL 33131
Telephone:  (305) 391-5100
Facsimile:  (305) 391-5101
Email: iross@sidley.com

*Counsel for Defendant Crunch Holdings, LLC,
Crunch Franchising, LLC, and Crunch LLC*